## BABCOCK & WILCOX CO. v. NORTH AMERICAN DREDGING CO.

(Circuit Court, D. New Jersey. February 7, 1907.)

1. PATENTS—CONSTRUCTION OF TERMS—"SECTIONAL STEAM-BOILERS."

   In the Pratt patent, No. 439,684, and the Hoxie patent. No. 595,852, both for "sectional steam-boilers." that term is used as embracing all water-tube boilers, and not as limited to a boiler built in sections, each section being composed of a group of tubes having front and rear headers common only to the tubes of that group.

2. SAME—INFRINGEMENT—SECTIONAL STEAM-BOILERS.

   The Pratt patent, No. 439,684, for a sectional steam-boiler, claim 5, when read in connection with the specification, is limited to a boiler in which there is a combination of groups of large and small tubes oppositely inclined, the large tubes being inclined from the front downwardly to the rear, while the upper, or smaller, tubes, are inclined from the front upwardly to the rear, the purpose of such opposite inclination being, as stated, to "promote the reverse circulation." and such claim is not infringed by a boiler in which the tubes are all upwardly inclined.

3. SAME.

   The Hoxie patent, No. 595,852, for a sectional steam-boiler, having the water tubes inclined upwardly from front to rear, and a transverse steam and water drum located at the front of the boiler in the space above said tubes, largely used for marine purposes, was not anticipated and discloses invention. Also *held* infringed.

4. SAME—VALIDITY—DESCRIPTION OF PRIOR ART.

   If a patentee in his specification describes in appropriate language a real invention and properly sets forth his claim to that invention, he is not to be deprived of it merely because he has inadvertently erred in his reference to the prior art.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 243.]

In Equity. On final hearing.

Gifford & Bull, for complainant.

Harry Van Ness Phillip, N. A. Acker, and W. F. Booth, for defendant.

LANNING, District Judge. The bill charges the defendant with conjoint infringement of claim 5 of patent No. 439,684, granted November 4, 1890, to N. W. Pratt, and the only claim of patent No. 595,852, granted December 21, 1897, to W. D. Hoxie. Each of the patents relates to improvements in steam-boilers and each of them is now owned by the complainant. Claim 5 of the Pratt patent is as follows:

"In a sectional steam-boiler, the combination of the furnace, the groups of inclined generating-tubes in vertical succession, having combustion spaces between them, the group or groups adjacent the furnace being composed of tubes of comparatively large diameter located at uniform distances apart, the succeeding group or groups being composed of tubes of comparatively small diameter arranged .in sub-groups or clusters, the intervening spaces of which are greater than the intervening spaces between the constituents of the clusters."

The claim of the Hoxie patent is as follows:

"In a sectional steam-boiler of the type described, the combination with the reversed inclined water-tubes of a transverse steam and water drum, located at the front of the boiler in the space above said tubes, as shown and described."

It will be observed that each of these claims relate to a "sectional steam-boiler." The defendant contends that its boiler is nonsectional, while the complainant insists that it is sectional. This is the first disputed point demanding consideration.

The testimony shows very clearly that the dispute arises from the fact that the witnesses for the complainant and those for the defendant do not adopt a common basis for their classification of boilers. The complainant's witnesses consider as sectional (1) any boiler in which the water, instead of being confined in one mass in a shell, is distributed amongst tubes which have a front header and a rear header each common to all the tubes; and (2) any boiler in which the water, instead of being confined in one mass in a shell, is distributed amongst tubes composed of separate groups, each group having a front header and a rear header common only to the tubes of that group. The defendant's witnesses insist that a sectional steam-boiler is only such an one as is built in sections; each section being composed of a group of tubes which have front and rear headers common only to the tubes of that group. The defendant's boiler is a water-tube boiler, and therefore, according to the complainant's witnesses, is sectional, but its front and rear headers are common to all the tubes, and, for this reason, the defendant's witnesses say it is nonsectional. We see, then, that the complainant's witnesses denominate as sectional any boiler whose water is divided into sections, while the defendant's witnesses denominate as sectional any boiler whose headers are divided into

sections. The complainant's classification is based on the treatment of the confined water; the defendant's classification is based on the mechanical construction of the boiler. There is authority for both uses of the term "sectional steam-boiler." The term originated, however, in the use which the complainant's witnesses make of it. This is admitted by the defendant's expert witness, Mr. William Stuart-Smith, who says:

"Terms once applied to any device possess a great deal of inertia, and are difficult to displace, even though they become misnomers. When the water-tube type of boiler was first introduced, a hundred or more years ago, they were called 'sectional boilers' to distinguish the new type, and they remained so for many years under that name; but later, when the type became subdivided, it was readily seen that the term was a misnomer and by no means described fully the type. Therefore the new name, 'water-tube boiler,' was used instead and has become of general use, although, as I say, the inertia of a term renders the use of the term 'sectional' by many people still common. Nevertheless it is not correct."

Mr. Stuart-Smith's admission that the complainant's use of the term "sectional" is still common is corroborated by other proofs in the case. The complainant's two patents were granted in 1890 and 1897, and Prof. Hutton, in his work "The Mechanical Engineer of Power Plants" (edition of 1897), says:

"A sectional boiler is a steam generator in which the plan of a single enveloping shell to contain the water and steam is abandoned, and is replaced by that of a number of small generating vessels so joined together that the steam formed in all of these separate units or sections is delivered from a common disengagement surface into a common steam space. The sectional principle may be carried in a boiler of large capacity to the extent of subdividing the disengagement area, so that the steam from several such areas would be delivered into a common steam drum, from which it shall be withdrawn by the steam pipe."

Quotations from other standard authorities, and from cyclopædias and dictionaries, might be made to show that the use of the term "sectional steam-boiler," in the sense in which the complainant's witnesses have used it, is common in the literature on the subject of steam-boilers. The present duty is to ascertain the sense in which the term is used in the complainant's two patents.

The Pratt patent is entitled "Sectional Steam-Boiler." The opening words of the specification are:

"Be it known that I, Nat. W. Pratt, * * * have invented certain new and useful improvements in sectional steam-boilers, of which the following is a specification: The herein described water-tube boiler is especially adapted for marine service. The construction of the same embodies a supporting structure composed as far as possible of the pipes forming the water spaces of the boiler."

I think the term "water-tube boiler" was here used synonymously with "sectional steam-boiler," for these reasons: First, because at the time the patent was granted such use of the term was common; second, because the term "sectional steam-boiler," used in the title of the patent, and the term "sectional steam-boilers," used in the first sentence

of the specification, relate to a class of boilers no less comprehensive than the class referred to by the term "water-tube boiler," used in the second sentence of the specification, the defendant's construction being one which makes the term "water-tube boiler" more comprehensive than the term "sectional steam-boiler"; and, third, because the use of the term "water spaces," in the third sentence of the specification, shows that the patentee had in mind sectional divisions of the water, and not sectional divisions of the mechanical structure. The mere fact that in the subsequent portions of the specification a sectional-headed boiler is described is not sufficient to justify the defendant's conclusion that the sectional steam-boilers referred to in the patent include only those boilers that have sectional headers.

The single claim of the Hoxie patent speaks of a combination "in a sectional steam-boiler of the type described." These words of the claim refer to the type of boiler described in the specification. That type is a water-tube boiler, with reversed inclined tubes and a transverse steam and water drum located at the front of the boiler in the space above the tubes. There is no suggestion in the specification that the headers are sectional or nonsectional. The language is sufficiently broad to include boilers having nonsectional, as well as those having sectional, headers. The defendant's counsel argue, however, that the drawing annexed to the patent shows headers that are sectional. This argument is based solely on the fact that the two headers shown in the drawing have sinuous ends. While it is not probable that a header common to all the tubes would have a sinuous end, the mere fact that the drawing shows such headers will no more justify a restrictive construction of the specification than if the drawing should show two headers whose ends were straight. If, because the drawing shows two headers with sinuous ends, the specification must be held to describe only a boiler with sectional headers, then if, for the present drawing, there be substituted one showing two headers with straight ends, the specification should be held to describe only a boiler with nonsectional headers. The plain language of the specification, sufficiently broad to describe both classes of boilers, cannot be thus restricted, and be held to be descriptive of a sectional steam-boiler or a nonsectional steam-boiler, according as the annexed drawing may show headers with sinuous or with straight ends. The specification describes a "water-tube boiler." Such a boiler is commonly known as a "sectional steam-boiler," and since there is nothing in the specification to indicate that the headers are necessarily sectional I think the words "sectional steam-boiler of the type described," used in the claim, refer to a water-tube boiler, having sectional or nonsectional headers, whose parts are arranged in the manner described in the specification.

The next disputed point relates to the alleged infringement of the Pratt patent. The water tubes of the defendant's boiler are all inclined from the front upwardly to the rear of the boiler. In the Pratt patent the lower tubes are inclined from the front downwardly to the rear, and the upper tubes from the front upwardly to the rear, as shown in figure 2 of the drawings for a double boiler annexed to the patent, which is as follows:

Fig. 2.

The specification says:

"The headers are serpentine in form, connecting the water-tubes 25 in single vertical series in staggered succession, or connecting the water tubes 26 in single vertical series of sub-groups or clusters in a similar staggered relation."

This means that a certain number of the lower tubes 25 (not numbered in the above figure, but being the tubes inclined from the front downwardly to the rear) are connected with a section of the front header, and with a corresponding section of the rear header, in such a manner that the tubes thus connected are arranged over one another (that is, in single vertical series), in a zigzag or staggered course, and that a certain number of the subgroups of the upper tubes 26 (not numbered in the above figure, but being the tubes inclined from the front upwardly to the rear) are connected with a section of the front header, and with a corresponding section of the rear header, in such manner that the subgroups thus connected are arranged over one another (that is, in single vertical series), in a zigzag or staggered course. It will be observed that the lower tubes 25 and the upper tubes 26

are oppositely inclined, and the specification says that "the opposite inclinations of the successive groups of tubes promote the reverse circulation." This statement, it seems to me, makes it reasonably clear that "the groups of inclined generating tubes in vertical succession," mentioned in claim 5, mean the oppositely inclined tubes 25 and 26, and not the inclined tubes 26 alone. There is nothing in the specification or drawings intimating a purpose to use in a boiler a group or bank of tubes inclined only as the tubes 26 are inclined. The claim of a patent must be read in connection with its specification. When the whole of claim 5 is read, it is found to relate to the larger tubes adjacent to the furnace and also to subgroups of small tubes, which latter the specification shows are above the larger tubes, and oppositely inclined to the larger tubes for the purpose of promoting reverse circulation. Claim 5 is for a combination. It is utterly impossible to understand it without reference to the specification. That reference, I think, shows that the larger and the smaller tubes shall be oppositely inclined, notwithstanding no such statement is expressly made in the claim. As all the tubes in the defendant's boiler are inclined in one direction, the defendant does not use the combination described in claim 5 of the Pratt patent, and consequently, does not infringe it.

The Hoxie patent presents a very different question. The only drawing annexed to it is shown on opposite page.

The specification and claim are not long and are quoted in full, with numerals inserted at the beginning of each sentence for the purpose of convenient reference:

"Be it known that I, William D. Hoxie, a citizen of the United States, residing at Brooklyn, in the county of Kings and state of New York, have invented a new and useful improvement in steam boilers, of which the following is a specification. [1] Heretofore in this type of boiler the inclined water-tubes were set at an acute angle with the vertical face or front of the boiler—in other words, were pitched downwardly from the front to the rear—the combustion-space within the furnace being highest at the front and lowest at the rear portion. [2] This arrangement of the inclined water-tubes also left a vacant vertical space above the rear end of the tubes. [3] The present invention consists in reversing the inclination of the water-tubes—that is, directing them upwardly from the front to the rear at an obtuse angle with the vertical face or front of the boiler—thus increasing the capacity of the combustion-chamber of the furnace at its rear part and transferring the vacant space above the tubes from the rear to the front of the boiler, and locating the steam and water drum at the front within this space, whereby it and its attachments are rendered more accessible and convenient for use and the whole structure made more compact. [4] Another great advantage in this reverse arrangement of the water-tubes is that they pitch downward toward the front of the boiler, which enables them and their spaces to be readily cleaned, removed, or repaired from directly within the fire-room. [5] In the accompanying drawing a side elevation, partly in section, of a boiler is shown embodying the improved arrangement. A, A, representing the vertical headers; B, the intermediate inclined water-tubes; C, the furnace with its door. C', and D the steam and water drum with its water-gage, d, these parts constituting the main essential elements in the structure, that are only necessary to refer to herein as explanatory of the appended claim. [6] By the construction and relative arrangement of the parts above enumerated and illustrated in the drawing it will. be observed that the combustion-chamber of the furnace is enlarged at its rear portion, which allows the gases to expand and give out their full heating effect as they pass to the inclined water-tubes which form

the principal generating feature of the boiler, the gases being directed through and around the same by the use of well-known baffleplates and by the also well-known staggered arrangement of the tubes with respect to each other or to each vertical series. [7] The reverse inclination of the water-tubes is also of great practical importance with reference to placing, removing, or cleaning the same. [8] The ends adjacent to the fire-room are brought down within more convenient reach for handling, and in cleaning the natural tendency of the dirt is to gravitate toward the cleaner. [9] By this arrangement the steam and water drum D is located on the extreme front of the boiler, which renders it more accessible for inspection, setting up, or repairs, and its usual appendages, like the water and pressure gages, gage-cocks, etc., are brought within the nearest possible association with the attendant. [10] This new type of boiler is especially adapted for marine uses wherein a series of boilers are employed and which are frequently located upon opposite sides within the hull of the vessel, the fire-room being located intermediate of the same. [11] Having now described my invention sufficient in detail as ex-

planatory of the claim, I wish it to be understood that I desire to secure by Letters Patent the broad combination of parts as set forth in the following claim: [12] In a sectional steam-boiler of the type described, the combination with the reversed inclined water-tubes of a transverse steam and water drum, located at the front of the boiler in the space above said tubes, as shown and described."

The most obvious difference between the Hoxie boiler and the defendant's boiler is in the fact that the Hoxie boiler, as heretofore constructed, has had sectional headers, while the headers of the defendant's boiler are nonsectional. The conclusion has already been expressed, however, that the Hoxie patent is broad enough to include boilers with nonsectional headers. This difference, therefore, does not enable the defendant to escape an adjudication of infringement. But the defendant's counsel contend that the Hoxie patent is void because of alleged anticipations by other patents. This defense, in my opinion, is not supported by the proofs. The Dickerson reissued patent, No. 1,993, granted in 1865, has a drum, as the defendant's expert, Mr. Stuart-Smith, admits, that covers the whole top of the boiler. It is therefore much higher than the Hoxie boiler, and probably could not be placed in a modern war vessel below its protected deck; and the testimony of Admiral Melville and Commodore Isherwood, which is not contradicted, shows that when tested in two naval vessels shortly after the Civil War it proved to be a complete failure. The Pratt patent, No. 439,684, of November 4, 1890, one of the two patents now in suit, while it has tubes inclined upwardly from the front to the rear, has other tubes inclined downwardly from the front to the rear. It has also a longitudinal drum. The Pratt patent, No. 428,632, of May 27, 1890, and the Pressard patent, No. 432,075, of July 15, 1890, have tubes inclined upwardly from the front to the rear, but each of them has a longitudinal drum. The remaining patents cited as anticipations have tubes inclined downwardly from front to rear. In none of these patents is there "the combination with the reversed inclined water-tubes [that is, with tubes inclined upwardly from front to rear] of a transverse steam and water drum located at the front of the boiler in the space above said tubes."

It is further argued that Hoxie's use of tubes inclined upwardly from the front to the rear was old, and that the transfer of the steam and water drum from its transverse position at the rear of the boiler, or from its longitudinal position, to a transverse position at the front of the boiler, involved no inventive genius. It must be admitted that Hoxie's statement in clause 1 of the specification—that "heretofore in this type of boiler the inclined water-tubes were set at an acute angle with the vertical face or front of the boiler, in other words were pitched downwardly from the front to the rear"—was not accurate. Dickerson's reissued patent, No. 1,993, Pratt's patent, No. 428,632, Pressard's patent, No. 432,075, and Pratt's patent, No. 439,684, all above referred to and all issued before the Hoxie patent, had reversed water-tubes. But I find no difficulty with this inaccurate statement of the prior art. If a patentee in his specification describes in appropriate language a real invention, and properly sets forth his claim to that invention, he is not to be deprived of it merely because

he has inadvertently erred in his reference to the prior art. The pertinent question is: Is the thing he described and claims an invention? The argument of the defendant's counsel is based on the assumption that the Hoxie patent must stand or fall "solely on the upward inclination of the generating tubes from front to rear." But the invention, as described by the patentee in clause 3 of the specification, is not so narrow. He there says that his invention consists in reversing the inclination of the water-tubes, and in locating the steam and water drum at the front of the boiler in the vacant space above the tubes. These two things constitute his alleged invention, and they, in combination, are what he sets forth in his claim. Simple, very simple, the combination seems to be. But, so far as the record discloses, nothing like it was ever before devised. Some of the advantages of the Hoxie boilers are mentioned in the specification. Others are mentioned by the complainant's witnesses. The Hoxie patent seems almost to have revolutionized the art of constructing boilers for marine uses. Since 1897 Hoxie boilers have been installed in vessels of the United States Navy, aggregating 497,946 horse power, and in vessels of the navy of Great Britain, aggregating 291,850 horse power. In the vessels of all countries the Hoxie boilers ordered or installed now aggregate nearly 1,000,000 horse power. The Hoxie boiler combines compactness with safety, efficiency, durability, and great convenience in cleaning and repairing. It was introduced in the navy of the United States by Admiral Melville, while he was Engineer in Chief of the Navy, after examination of many other types of boilers offered to the Navy Department, and was selected by him because he deemed it "the best boiler of the class to be installed in the ships of the Navy of the United States." He declares that it has given "perfect satisfaction so far as the work of man can go," and that Hoxie was the first to solve the efforts of a hundred years to construct a light, safe, and economical marine boiler. Previous to 1897 the type of boiler principally used in the larger vessels of the United States Navy was the fire-tube boiler. Between 1891 and 1897 a controversy had been carried on in engineering periodicals concerning the relative merits for marine uses of fire-tube boilers and water-tube boilers. This controversy became known as the "Battle of the Boilers." These facts show how strenuous were the efforts before the date of the Hoxie patent to invent an improved type of marine boiler. In that battle Hoxie was the victor. The simplicity of the invention may cause surprise that the battle was so long a one. But the fact that there was such a battle is conclusive proof that the combination described in the Hoxie patent was not obvious. In Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, Mr. Justice Bradley, in considering the fifth claim of the Webster patent, then in suit, said:

"It is further argued, however, that, supposing the devices to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices, already well known, and therefore it is not patentable. This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed—one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not for years occur in this light to even

the most skillful persons. It may have been under their very eyes, they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice."

This oft-quoted language is peculiarly applicable to the invention described and claimed in the Hoxie patent. That it discloses invention seems to me clear. The defendant's boiler unquestionably embodies the combination set forth in the claim of the Hoxie patent. The defendant's expert witness expressly admits it.

The result is that there must be a decree that the defendant is an infringer of the Hoxie patent, but not of the Pratt patent. The complainant is entitled to costs.